J-S60001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.J.C.M., A MINOR<br><br>APPEAL OF: K.S.M., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 834 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000069-2015

| | |
|---|---|
| IN THE INTEREST OF: K.S.M., JR., A MINOR<br><br>APPEAL OF: K.S.M., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 857 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
51-FN-002571-2013
CP-51-AP-0000067-2015

| | |
|---|---|
| IN THE INTEREST OF: K.R.M., A MINOR<br><br>APPEAL OF: K.S.M., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 891 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000066-2015

| | |
|---|---|
| IN THE INTEREST OF: K.F.-W.M., A MINOR<br><br>APPEAL OF: K.S.M., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 919 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):

J-S60001-15

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 11, 2015**

Appellant, K.S.M., ("Father"), appeals from the decrees dated February 10, 2015, terminating his parental rights to K.J.C.M. (born in January of 2011), K.R.M. (born in May of 2009), K.F.-W.M. (born in February of 2008), and K.S.M. (born in July of 2006) (collectively "the Children") and changing the Children's permanency goals to adoption under section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.[2]

On June 19, 2013, the Children became known to the Philadelphia Department of Human Services ("DHS") after receiving General Protective Services ("GPS") reports alleging Mother brought the Children to DHS.  The reports stated that Mother was overwhelmed and lacked proper resources, including food and clothing for the Children.  At that time, Father had been incarcerated since June 11, 2013, due to domestic violence against Mother.  He was incarcerated based on convictions of aggravated assault, endangering the welfare of children, recklessly endangering another person,

_____

[1] B.B.'s ("Mother") parental rights to the Children were terminated on February 10, 2015.  Mother is not a party to this appeal nor did she file a separate appeal.

[2] We point out that the trial court failed to forward the record in this matter to this Court in a timely fashion as dictated by the children's fast track rules.

- 2 -

simple assault, possession of an instrument of crime, and terroristic threats. Father remained incarcerated until he was released to a halfway house on January 16, 2015.

On June 19, 2013, DHS obtained Orders of Protective Custody ("OPC") for the Children, and the Children were taken into the care of DHS. Following the OPC, K.R.M. and K.F.-W.M. were placed with C.L., the Children's maternal uncle ("Maternal Uncle"). K.S.M. and K.J.C.M. were placed in the care of L.B., the Children's paternal uncle ("Paternal Uncle") and A.B., the Children's paternal aunt ("Paternal Aunt"). On July 2, 2013, the Children were adjudicated dependent, and the trial court ordered Father to complete a Family Service Plan ("FSP"). On July 31, 2013, Father's FSP objectives were (1) to maintain contact with the DHS worker while in jail; (2) to contact the DHS caseworker when he was released; and (3) to maintain visitation with the Children.

On January 26, 2015, DHS filed petitions to involuntarily terminate Father's parental rights to the Children. On February 10, 2015, the trial court held a hearing on the termination petitions. At the termination hearing, Marleihia Harper, a DHS social worker; Heather Allen, a caseworker from Delta Community Support; Malik Charles, a Bethanna Social Worker; Father; and Mother testified. On February 10, 2015, the trial court entered its decrees terminating Father's parental rights pursuant to 23 Pa.C.S.

J-S60001-15

§ 2511(a)(1), (2), (5), (8), and (b), and changing the Children's permanency goals to adoption.

On March 12, 2015, Father timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issue on appeal.

1. Whether the trial court erred in terminating Father['s] parental rights where the record established Father's temporary absence from [the] Children's lives was due to a [eleven and a half] to [twenty-three] month county jail sentence he was doing; he was in full compliance with his only FSP objective during his [twenty] month jail term; and where he contacted DHS upon his release to reestablish physical contact with [the] Children?

Father's Brief at 2.[3]

_____

[3] In Father's "Statement of Matters Complained on Appeal," Father raises the issues that "the evidence established that the developmental, physical and emotional needs of [the Children] would be best served by reunification with Father and, therefore, termination was not warranted." Father did not set forth or suggest this issue in his Statement of Questions Involved in his brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived). However, we will review whether termination of parental rights would best serve the developmental, physical and emotional needs of the Children. *In re C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted) (stating that, only after determining that a parent's conduct warrants termination under subsection (a) must a court engage in the analysis under subsection (b)). Father, however, has waived any challenge to the change of the Children's permanency goals to adoption, as he failed to raise the issue in his Concise Statement and his Statement of Questions Involved in his brief.

- 4 -

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated: The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally,

this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

In terminating Father's parental rights, the trial court relied *inter alia* upon Sections 2511(a)(1), (2) and (b) of the Adoption Act which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > \*   \*   \*
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > \*   \*   \*
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
> >
> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

- 7 -

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

With respect to section 2511(a)(2), the grounds for termination of parental rights, due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002). Nevertheless, parents are required to

make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340.

The fundamental test in termination of parental rights under section 2511(a)(2) was long ago stated in *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced that under what is now section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Parental duty requires that the parent act affirmatively with a good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. *In re E.M.*, 908 A.2d 297, 306 (Pa. Super. 2006). A trial court can find an incapacity to parent by finding affirmative misconduct, acts of refusal to parent as well as an incapacity to parent. *In re S.C.B.*, 990 A.2d 762, 771 (Pa. Super. 2010).

On appeal, Father argues that the trial court erred in terminating his parental rights to the Children. Father's Brief at 5. Father argues that he was not afforded the time required under the law, six months, to assess his parenting, as required to address the statutory issues, as he was released

from prison just twenty days before trial was held in the instant matter, after only a twenty-month sentence. *Id.* With regard to a parent's incarceration, in *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court reiterated the standard of analysis pursuant to section 2511(a)(1) for abandonment and added as follows:

> Applying [*In re: Adoption of McCray*,] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [460 Pa. 210, 217, 331 A.2d 652, 655]. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*
>
> * * *
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, 47 A.3d at 828 (quoting *In re: Adoption of McCray*, 331 A.2d at 655 (footnotes and internal quotation marks omitted). Further, the Supreme Court stated, "incarceration neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828 (adopting this Court's statement in *In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010)).

The trial court found that, during six months prior to the filing of the termination petition, Father demonstrated a settled purposed of relinquishing his parental claim to the Children or failed to perform parental duties. Trial Court Opinions, 5/15/15, at 2.[4] Father was incarcerated approximately twenty-three months of the Children's life. *Id.* at 2. Moreover, the trial court found that Father did not utilize all resources available to him in order to maintain contact with the Children while he was incarcerated. *Id.* at 8. The trial court found:

> Father had no contact with [the Children] during both the period of time he was incarcerated nor did he attempt to contact [the Children] since his release from custody. Father's failure to take steps to establish a parental relationship with [the Children] or corresponding in any fashion with [the Children] served to demonstrate his settled purpose of relinquishing his parental rights. Father didn't send any letters, cards [sic] nor did he attempt to contact [the Children] directly [through] the foster parent. During the entire time that [the Children were] in placement Father made no attempt to contact [the Children] nor did he make efforts to set up a visitation schedule with [the Children] upon his release from prison.

*Id.* at 7.

At the hearing, Ms. Harper testified that Father did not contact her from the time the Children came into care until the summer of 2014. N.T., 2/10/15, at 19-36. Ms. Harper testified that Father contacted her over the summer of 2014 and a "little bit" into the fall of 2014. *Id.* at 18-19. Ms.

---

[4] The trial court issued an opinion for each docket number, but all the opinions are collectively the same.

Harper testified that Father did not have any contact with her since he was released from prison. *Id.* at 20. Ms. Harper testified Father did not try to arrange visitation with the Children since his release from prison. *Id.* at 19-20. Ms. Harper testified that Father was compliant with his goal of staying in contact while in prison, but Father was not compliant with his objective of contacting her once he was released from prison. *Id.* at 37. Moreover, Ms. Allen testified that Father never visited the Children, and did not make any outreach for visitation at DHS. *Id.* at 41. Ms. Allen testified that Father inquired about the Children's well-being three times since the Children have been in care. *Id.* at 50-51.

Father testified that he did not have any phone contact with the Children since they were placed into DHS's care. *Id.* at 86. Father testified that he did not ask DHS caseworkers about visitation with the Children. *Id.* Father testified that he attempted to contact Ms. Harper a week before the termination hearing. *Id.* at 81-82. Furthermore, Mother testified that Father ceased to have any personal interaction with the Children once he was incarcerated. *Id.* at 67.

The record reveals that the trial court took into consideration Father's alleged desire to contact the Children and his period of incarceration. The trial court found that Father's failure to perform his parental duties was not due solely to his incarceration since "Father had no contact with [the Children] during both the period of time he was incarcerated nor did he

attempt to contact [the Children] since his release from custody." Trial Court Opinions, 5/5/15, at 7.

The trial court found Father's testimony not credible. *Id.* at 3. His argument regarding section 2511(a)(1) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. Consequently, Father's issue on appeal lacks merit, and we find no abuse of discretion in the trial court's evaluation of section 2511(a)(1) with respect to Father.

With respect to 2511(a)(2), the trial court found that Father evidenced both an incapacity and refusal to parent because of "Father's failure to establish and maintain a relationship with [the Children] when [the Children were] in foster care." Trial Court Opinions, 5/5/15, at 9. Moreover, the trial court rejected Father's argument that he maintained contact with Ms. Harper and that his compliance with DHS's objective relieves him of the duty to

establish and maintain a parental relationship with the Children. *Id.* at 12. The trial court found:

> Compliance with an objective established by an agency does not equate to a parent's responsibly and duty to maintain a place of importance in a [c]hild's life. While incarcerated, Father had a positive duty to foster a healthy relationship with [the Children]. Additionally, once Father was released from prison he made no effort to contact DHS, the agency or the foster parents to arrange for visitation with [the Children]. In any event termination of parental rights are not precluded based upon a determination of whether a parent was in compliance with an objective established by an agency.

*Id.*

Our Supreme Court recently rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In the Interest of: D.C.D., a Minor*, 105 A.3d 662, 673-674, 676 (Pa. 2014) (rejecting the suggestion that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights, and rejecting the suggestion that section 2511 of the Adoption Act should be read in conjunction with section 6351 of the Juvenile Act, particularly 42 Pa.C.S. § 6351(f)((9)(iii)). Therefore, Father's issue on

appeal lacks merit, and we find no abuse of discretion in the trial court's evaluation of Section 2511(a)(2).[5]

The trial court must also consider how terminating Father's parental rights would affect the needs and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. **See In re C.M.S.**, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **Id.** at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **See id**.

The trial court found that terminating Father's parental rights would be in the best interest of the Children. Trial Court Opinions, 5/5/15, at 12. The trial court found that the Children are "in a nurturing and loving pre-adoptive foster home." **Id.** The trial court found, since the Children have been in

---

[5] As the removal of the Children was not from Father, we will not discuss section 2511(a)(5) and (8) of the Adoption Act. **In re Z.P.**, 994 A.2d at 1123, n. 2.

DHS's care for twenty-three months, "there was no evidence that [Father] has ever cared for [the Children]." *Id.*

Ms. Harper and Ms. Allen testified that termination of Father's parental rights would be in the best interest of the Children. N.T., 2/10/15, 23, 39. Ms. Allen testified that Father never sent any gifts to the Children on their birthdays. *Id.* at 42. Moreover, Ms. Allen and Ms. Harper testified that the Children have not brought up nor talked about Father. *Id.* at 22, 43, 49.

Ms. Harper and Ms. Allen testified that the Children's needs are being met, and that the Children are safe and doing well in their foster homes. *Id.* at 23-26, 38-39. Ms. Harper testified that K.R.M. and K.F.-W.M. are in a foster home through Delta Children services and doing well. *Id.* at 24-25. Ms. Allen testified that K.J.C.M is well-adjusted in his pre-adoptive foster home and calls his foster mother "Mommy." *Id.* at 26, 39. Ms. Harper testified that K.S.M. is doing well in his pre-adoptive home with Maternal Aunt and Maternal Uncle. *Id.* at 23. Malik Charles testified that K.S.M. is in a safe home and that all of his needs are being met by his foster parents. *Id.* at 54-55.

On the issue of bonding, our review of the record reveals no evidence of a bond between Father and the Children. The trial court found that there was no evidence that Father had any kind of relationship with the Children. Trial Court Opinions, 5/5/15, at 11-12. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is

reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

After this Court's careful review of the record, we conclude that the competent evidence in the record supports the trial court's determination that there was no bond between Father and the Children and that the termination of Father's parental rights would best serve the needs and welfare of the Children.  Thus, we will not disturb the trial court's determinations.  *See In re M.G.*, 855 A.2d at 73-74.  Therefore, we affirm the decrees terminating Father's parental rights to the Children on the basis of section 2511(a)(1), (2), and (b), and changing their permanency goals to adoptions.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015